In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana




______________________________




No. 06-02 -00025 -CV


______________________________






CHARLOTTE J. PATRICK AND


VANESSA L. SIMMONS, Appellant s



V.




LEONARD MCGOWAN, Appellee





 



On Appeal from the 296th Judicial District Court


Collin County, Texas


Trial Court No. 2961150-00





 







Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter




O P I N I O N




 Charlotte J. Patrick (Patrick) and Vanessa L. Simmons (Simmons), Appellants, appeal the trial court's award of
summary judgment in favor of the Defendant-Appellee, Leonard McGowan (McGowan). Patrick and Simmons sued
McGowan, their former supervisor, for intentional infliction of emotional distress and defamation per se. McGowan
filed a motion for summary judgment and written objections to plaintiffs' summary judgment evidence. The trial court
sustained McGowan's objections to plaintiffs' summary judgment evidence and granted summary judgment in favor of
McGowan. 

 Patrick and Simmons were employed by McKinney Housing Authority (MHA) until their terminations on January 21,
1998. McGowan was their supervisor at MHA. Patrick and Simmons assert that they were harassed by McGowan from
approximately September 1995 until their termination. After Patrick and Simmons reported McGowan's inappropriate
behavior, MHA and McGowan began investigating them. This investigation ended with Patrick and Simmons being
terminated. 

 According to Patrick and Simmons, after they were terminated, McGowan defamed them by making statements that they
had committed fraud, lied, and committed other unspecified crimes. Appellants filed suit against MHA and McGowan in
Dallas County, and the case was later transferred to Collin County. MHA filed a plea to the jurisdiction, which was
granted on December 20, 2000. The trial court severed the claims against MHA from the claims against McGowan. 

 A summary judgment is proper for a defendant only if the defendant establishes that no genuine issue of material fact
exists as to one or more essential elements of the plaintiff's claims and that it is entitled to a judgment as a matter of law. 
Tex. R. Civ. P.166a(c); see Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972). The movant has the burden of proof, and
all doubts are resolved in favor of the nonmovant. Roskey v. Tex. Health Facilities Comm'n, 639 S.W.2d 302, 303 (Tex.
1982). The reviewing court will take all evidence favorable to the nonmovant as true, MMP, Ltd. v. Jones, 710 S.W.2d
59, 60 (Tex. 1986), and will indulge every reasonable inference and resolve any reasonable doubt in the nonmovant's
favor. Cont'l Casing Corp. v. Samedan Oil Corp., 751 S.W.2d 499, 501 (Tex. 1988). 

 Patrick and Simmons claim the trial court erred in sustaining McGowan's objections to their summary judgment
evidence. We review rulings concerning the exclusion of summary judgment evidence under an abuse of discretion
standard. See City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). To obtain reversal of a judgment
based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error
and that the error probably caused the rendition of an improper judgment. Tex. R. App. P. 44.1(a)(1); see Alvarado, 897
S.W.2d at 753-54. 

 The trial court specifically sustained McGowan's objections to the following:

 (1) Plaintiff Simmons's statement in her deposition that McGowan made an "allegation that [Simmons] committed fraud
in reference to the housing program."



 (2) Statements allegedly made to unnamed employees of the Manor House Apartments.



 (3) Statements that Simmons committed fraud at the McKinney Housing Authority (MHA) that are "still going on to the present."



 (4) Statements allegedly made to employees of MHA , specifically including, but not limited to, Eula Upson.



 (5) Statements allegedly made to employees of Patrick's prospective employers, and/or reasons Patrick was not hired.



 (6) Statements allegedly made to the Texas Workforce Commission.



 (7) Statements allegedly made to employees of Simmons's prospective employers.



 (8) Statements allegedly made to Eula Upson regarding the arrest of Plaintiffs.



 (9) Statements allegedly made to former coworkers of Patrick.

 McGowan argued to the trial court that Appellants' summary judgment evidence was wholly based on hearsay,
speculation, and without personal knowledge; therefore, the evidence would not have been admissible. Tex. R. Civ. P.
166a. To constitute competent summary judgment evidence, affidavits must be made on personal knowledge, setting
forth such facts as would be admissible in evidence, and must affirmatively show that the affiant is competent to testify
to matters stated therein. Tex. R. Civ. P. 166a(f); Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex.
1996);Alejandro v. Bell, 84 S.W.3d 383, 388 (Tex. App.-Corpus Christi 2002, no pet. h.).

 We will address each of the Appellants' particular facts separately after discussing the relevant law. Appellants argue
that their summary judgment evidence should not have been struck. Patrick and Simmons argue that portions of the
summary judgment evidence are not inadmissible hearsay because the testimony was not offered for the truth of the
matter asserted, but rather to refute McGowan's motion for summary judgment based on the statute of limitations. 
Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d).
Evidence of an out-of-court statement is hearsay only if it is introduced to prove the truth of the matter asserted. Busse v.
Pac. Cattle Feeding Fund #1, Ltd., 896 S.W.2d 807, 816 (Tex. App.-Texarkana 1995, writ denied). 

 McGowan's first ground for summary judgment was based on the statute of limitations. McGowan further asserts that
Section 101.106 of the Texas Tort Claims Act bars this suit. That section reads as follows:

 A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter
by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.



Tex. Civ. Prac. & Rem. Code Ann. § 101.106 (Vernon 1997). McGowan argues the above provision bars plaintiffs'
claims due to the court's previous ruling regarding jurisdiction as to MHA.

 Patrick and Simmons argue their evidence was intended to refute McGowan's statute of limitations arguments. 
Therefore, it is argued, the statements made in deposition were to be used solely for timing purposes, in an attempt to
negate McGowan's claim of limitations; these statements were not offered for the truth of the matter asserted. 

 The first portion of the summary judgment evidence the trial court struck was Simmons's statement at deposition that
McGowan made an allegation that she "committed fraud in reference to the housing program." The attorney asked
Simmons, "In this lawsuit, are you complaining about actions taken or words spoken or anything done by Leonard
McGowan after January 21st, 1999?" Simmons responded, "Yes," and elaborated with the above statement concerning
alleged fraud. This statement was attempted to be used for the purpose of establishing evidence with reference to the
time the alleged actions occurred, and not for the truth of the statement. However, Texas Rule of Evidence 602 requires
all testimony to be based on personal knowledge. Tex. R. Evid. 602. Patrick stated that McGowan had said something
about her after January 21, 1999, but also admitted she had not seen or had any conversation with McGowan after
January 21, 1998.

 In Stephens v. Delhi Gas Pipeline Corp., 924 S.W.2d 765 (Tex. App.-Texarkana 1996, no writ), this Court has discussed
this issue in a very similar case. In Stephens, the plaintiff alleged that his former employer defamed him when its
managers in discussing his termination were "accusing me of theft" and an unnamed person told him a foreman said he
was "fired because [employer] considered him a thief." Id. This Court found that the plaintiff had not clearly indicated
whether plaintiff had firsthand knowledge of what was said. These statements were found to be incompetent for
summary judgment purposes as not based on personal knowledge and were inadmissible in evidence. Id. In the present
case, there is no evidence that establishes Patrick had any personal knowledge of the alleged statements made by
McGowan; thus, the trial court properly sustained the objection to the testimony. See, e.g., Vill. of Bayou Vista v.
Glaskox, 899 S.W.2d 826, 830 (Tex. App.-Houston [14th Dist.] 1995, no writ). 

 The trial court also struck portions of the summary judgment evidence concerning statements allegedly made by
McGowan to unnamed employees of Manor House Apartments, Simmons's subsequent employer. It is argued this
evidence was produced only to refute the limitations argument in the motion for summary judgment. Simmons testified
that, sometime in 2000, she applied for a manager position at Manor House Apartments. She received the position, but
was allegedly terminated after Manor House received a negative verbal response from her previous employment
(allegedly McGowan). Simmons testified that she began working at Manor House in August of 2000, and worked there
only two days, after the response from McGowan. This testimony was properly excluded because it does not clearly
establish the identity of this "previous employer" that allegedly made these statements. Even if McGowan was clearly
identified, this type of information is also generally privileged. A former employer's statements about a former employee
made to a prospective employer fall within the qualified privilege that protects communications made in good faith on a
subject matter in which the author has a common interest with the other person, or with reference to which he has a duty
to communicate to the other person. Smith v. Holley, 827 S.W.2d 433, 436 (Tex. App.-San Antonio 1992, writ denied). 
Furthermore, there is also no evidence that Patrick had any personal knowledge of these alleged defamatory statements;
thus, her testimony was not admissible. 

 The third portion of the summary judgment evidence that was excluded was Simmons's testimony that defamation was
"still going on to present," concerning the allegation that she committed fraud. The attorney asked Simmons in
deposition if this alleged defamation occurred on January 21, 1998. Simmons responded that it was "still going on to
present." The attorney responded, "[S]omeone is saying that you've been terminated for fraud?" And Simmons replied,
"Yes." When asked who made that statement, Simmons replied, "Everybody in the community . . . ." Once again, no one
was clearly identified as making such statements, and it did not show that the witness had personal knowledge of this
statement or merely an understanding of what was said. Stephens, 924 S.W.2d 769.

 The trial court also struck the summary judgment evidence of statements allegedly made by McGowan to employees of
MHA, including, but not limited to, Eula Upson. This testimony was raised in Patrick's deposition in response to the
question, "Do you know whether or not Mr. McGowan has made any comments or statements about you since you left
on January 20th, 1998?" Patrick responded, "Yes." At that point Patrick elaborated that Upson, who at that time was an
employee of McGowan, told her that every Monday McGowan would make it a point to ask about Patrick. Upson
worked at MHA until the year 2000. Patrick further elaborated that Upson told her that McGowan stated that she
(Patrick) was going to the "penitentiary." All of these comments were made some time after January 1998. Because
Upson was an employee of McGowan, information concerning Patrick would not be grounds for a defamation action
because, while there is publication, statements made to other employees are generally privileged unless they are made
with malice. See id. at 769. Furthermore, Patrick had no personal knowledge that McGowan made such statement.
Thus, the trial court properly sustained the objection to the testimony.

 The trial court also struck evidence regarding statements allegedly made to employees of Patrick's prospective employer. 
Patrick testified that, after January 1998, McGowan spoke to a potential employer. After going through two interviews,
Patrick was told that, when they "verified [her] previous employer" and found out she was in litigation, she was not
hired. The potential employer was given this information by McGowan. This does not present evidence of defamation.

 The trial court struck summary judgment evidence of statements allegedly made to the Texas Workforce Commission. 
Simmons testified that, in April of 1998 during the Workforce Commission telephone hearing, slanderous remarks were
made by McGowan. It is unclear from the record if Simmons had personal knowledge of these statements. Those
statements, made by McGowan, would not be admitted as evidence of defamation, even if Simmons did have personal
knowledge of the statements, because they are protected by the qualified privilege concerning a former's employer's
statements about a former employee made in good faith where the other person (the Workforce Commission) has a
common interest. See Holley, 827 S.W.2d at 436.

 Appellants contend the trial court erred in granting summary judgment to McGowan because the claims of defamation
and intentional infliction of emotional distress are within the appropriate statute of limitations and offers deposition
testimony to defeat McGowan's motion for summary judgment.

 A suit for defamation must be brought no later than one year after the cause of action accrues. Tex. Civ. Prac. & Rem.
Code Ann. § 16.02 (Vernon 2002). The only evidence submitted on this issue was properly struck by the trial court and,
thus, is not competent evidence. The trial court properly granted McGowan's motion for summary judgment for
Appellant's defamation claim based on the statute of limitations. This point of error is overruled.

 Appellants also argue that the claim for intentional infliction of emotional distress was within the appropriate statute of
limitations. The statute of limitations for intentional infliction of emotional distress is two years. Tex. Civ. Prac. &
Rem. Code Ann. § 16.003 (Vernon 2002). We have held that the only evidence submitted was properly struck. The trial
court properly granted summary judgment in favor of McGowan based on limitations. This point of error is overruled.

 As we have found that the trial court correctly granted summary judgment for defendant on the above grounds, we need
not address the remaining issue as to whether the trial court correctly granted summary judgment based on Section
101.106 of the Texas Tort Claim Act. Tex. Civ. Prac. & Rem. Code Ann. § 101.106.



 We affirm the judgment.





 Jack Carter

 Justice



Date Submitted: March 7, 2003

Date Decided: April 4, 2003



ption Locked="false" Priority="66" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium List 2 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00092-CR

                                                ______________________________

 

 

                                  RANDY DALE BARNETT,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the Sixth
Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 23473

 

                                                          
                                        

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss








                                                                   O P I N I O N

 

            The
turbulent scene in the Sunriser Diner began when a tearful, red-faced, Kitty
Rowland dashed into the Sunriser and immediately headed for the ladies
room.  Soon thereafter, Randy Dale Barnett
strolled into the diner and entered the mens room.  After both emerged back into the dining area,
Rowland and Barnett settled into a booth by the front door and ordered coffee
from waitress Lisa Dale Wagner.  The
ensuing argument between the pair was witnessed by Wagner and by diner cook
Sandy Flynn and regular customer James Bryan. 
The argument escalated into more tears from Rowland and anger, threats,
and verbal abuse from Barnett.  When
Bryan sought to verbally defuse the argument and threatened to call police,
Barnett reportedly pulled a knife and threatened Bryan.

            As a result,
Barnett was convicted for aggravated assault with a deadly weapon and sentenced
to fifty years imprisonment.  On appeal,
Barnett urges a number of issues.  We
affirm the trial courts judgment because (1) sufficient evidence supports Barnetts
conviction, (2) ineffective assistance of counsel has not been shown, (3)
the officers testimony that the knife was a deadly weapon was lay testimony, (4)
the appellate complaint of bolstering was not preserved, (5) Barnett was not
entitled to the appointment of a different attorney, (6) the mistrial motion
was properly denied, and (7) a definition of serious bodily injury was not required.

(1)        Sufficient Evidence Supports Barnetts
Conviction

 

            Barnett
argues that the evidence is legally insufficient to prove that he used or
exhibited a deadly weapon when threatening Bryan.  We disagree.

            In evaluating legal sufficiency,
we review all the evidence in the light most favorable to the trial courts
judgment to determine whether any rational jury could have found the essential
elements of aggravated assault with a deadly weapon beyond a reasonable
doubt.  Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing
Jackson v. Virginia, 443 U.S. 307,
319 (1979)); Hartsfield v. State, 305
S.W.3d 859, 863 (Tex. App.Texarkana 2010, pet. refd).  Our rigorous legal sufficiency review focuses
on the quality of the evidence presented. 
Brooks, 323 S.W.3d at 917
(Cochran, J., concurring).  We examine
legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility of the
jury to fairly resolve conflicts in testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts.  Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 31819); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).

            Legal
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Malik
v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); see Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); see also Vega v. State, 267 S.W.3d 912,
916 (Tex. Crim. App. 2008).  Barnetts
indictment alleges he did then and there intentionally or knowingly threaten
imminent bodily injury to James Bryan by threatening to cut James Bryan and the
defendant did use or exhibit a deadly weapon during the commission of the assault,
to-wit:  a knife. 

            Barnett
committed the offense of aggravated assault if he, intentionally or knowingly
threatened Bryan with imminent bodily injury and used or exhibited a deadly
weapon during the threat.  Tex. Penal Code Ann. §§ 22.01(a)(2),
22.02(a)(2) (Vernon 2011).  A deadly
weapon is anything that, in the manner of its use or intended use, is capable
of causing death or serious bodily injury. 
Tex. Penal Code Ann. §
1.07(a)(17)(B) (Vernon 2011).

            As the
confrontation developed, when Bryan reached for his cell phone, Barnett reportedly
shoved him, brought a pocketknife [sic] out of his pocket, put it up to [Bryans]
ribs and said, Ill cut it from side toIll kill you too.  Bryan testified that he saw the two inch
blade and very well felt he would cut me. 
Flynn saw that Barnett was standing in the doorway with his hand down
to his side with what appeared to be a knife, the point blade of a knife in
his hands.  When Flynn picked up a telephone
and dialed 9-1-1, Barnett fled, leaving Rowland behind.  

            Although
Flynn testified she saw a knife, she did not see Barnett attempt to cut or
shove Bryan.  Instead, she testified
Barnett was standing in the doorway when he brandished the knife.  Wagner also testified that, while the men
were just kind of standing face-to-face, she did not see Barnett shove
Bryan.  Wagner also said she did not see
a knife.  Rowland, who was not at trial,
signed an affidavit that stated, other people there said that [Barnett] pulled
out his pocket knife.  I never saw him
and in the last 3 months [Barnett has] not carried one that I know of.  

            Here, Bryan
testified that Barnett shoved him, placed a two inch blade on the lower part of
his ribs, and said, Ill cut it from side toIll kill you too.  Bryans testimony that he very well felt
[Barnett] would cut me, demonstrates the immediacy and nature of the
threat.  A police officer testified that
the pocket knife was a deadly weapon capable of causing death or serious bodily
injury.  

            Although
there is evidence contradicting Bryans testimony, the jury was the exclusive
judge of credibility of witnesses, the weight to be given their testimony, and
reconciliation of conflicts in the evidence.  Wyatt v.
State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).  The jury was free to find that Bryan was in the
best position to observe Barnetts threats. 
We find the evidence legally sufficient to establish that Barnett
intentionally or knowingly threatened Bryan that he would cut him while
brandishing a knife.  There was testimony
that the knife could be considered a deadly weapon capable of causing death or
serious bodily injury.  Therefore, we
find the evidence legally sufficient to sustain Barnetts conviction for
aggravated assault with a deadly weapon. 
Barnetts first point of error is overruled.

(2)        Ineffective Assistance of Counsel Has
Not Been Shown

 

            Barnett
claims that he received ineffective assistance of counsel in a number of ways.

            In order to
ultimately prevail in an ineffective assistance of counsel claim, a defendant
seeking to challenge counsels representation must establish that his or her counsels
performance was deficient and prejudiced the defense.  Smith
v. State, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009) (citing Strickland v. Washington, 466 U.S. 668,
687 (1984); Mitchell v. State, 68
S.W.3d 640, 642 (Tex. Crim. App. 2002)). 
Any allegation of ineffectiveness of counsel must be firmly founded in
the record.  Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999); Wallace v. State,
75 S.W.3d 576, 589 (Tex. App.Texarkana 2002), affd, 106 S.W.3d 103 (Tex. Crim. App. 2003).  From the record received by this Court, which
includes the hearing on Barnetts motion for new trial, Barnett bears the
burden of proving by a preponderance of the evidence that his counsel was
ineffective.  Goodspeed, 187 S.W.3d at 392; Thompson,
9 S.W.3d at 813; Cannon v. State, 668
S.W.2d 401, 403 (Tex. Crim. App. 1984).

            We apply the
two-pronged Strickland test handed
down by the United States Supreme Court to determine whether Barnett received
ineffective assistance of counsel.  Strickland, 466 U.S. 668.  Failure to satisfy either prong of the Strickland test is fatal.  Ex parte
Martinez, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006).  Thus, we need not examine both Strickland prongs if one cannot be
met.  Strickland,
466 U.S. at 697.

            First, Barnett
must show that counsels performance fell below an objective standard of
reasonableness in light of prevailing professional norms.  Id.
at 68788.  There is a strong presumption
that counsels conduct fell within the wide range of reasonable professional
assistance and that the challenged action could be considered sound trial
strategy.  Id. at 689; Ex parte
White, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  Therefore, we will not second-guess the
strategy of Barnetts counsel at trial through hindsight.  Blott
v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Hall v. State, 161 S.W.3d 142, 152 (Tex. App.Texarkana 2005, pet.
refd).

            The
second Strickland prejudice prong
requires a showing that, but for counsels unprofessional error, there is a
reasonable probability that the result of the proceeding would have been
different.  Strickland, 466 U.S. at 68788. 
A reasonable probability is a probability sufficient to undermine
confidence in the outcome, meaning that counsels errors were so serious as to
deprive the defendant of a fair trial, a trial whose result is reliable.  Smith,
286 S.W.3d at 340. 

            Ineffective
assistance of counsel has not been shown to have occurred in any way asserted
on appeal, because (a) failure to get Rowlands testimony may have been
reasonable trial strategy, (b) failure to seek a finding on lesser included
offenses was not substandard, (c) failure to find and submit mitigating
evidence was not substandard, and (d) not objecting to particular evidence was
not substandard.  We examine each
complaint in turn.

            a.         Failure to Get Rowlands Testimony May
Have Been Reasonable Trial Strategy

 

            Barnett
asserts, on appeal as he did in his motion for new trial, that his trial
counsel rendered ineffective assistance by failing to request a continuance to
locate Rowland and in failing to subpoena Rowland.  A claim of ineffective assistance based on
trial counsels failure to call a witness cannot succeed absent a showing that
the witness was available to testify and that the witness testimony would have
benefitted the defense.  See Ex parte Ramirez, 280 S.W.3d 848,
853 (Tex. Crim. App. 2007).

            During
the hearing on the motion for new trial, trial counsel, Jerry Coyle, testified
that he had not interviewed Rowland because he was unable to locate her.  Although Rowland gave a favorable written
statement, Coyle believed that if she were to actually testify, it would be
harmful, due to the volatile nature of their relationship.  This opinion was developed after Coyles
conversations with Barnett in which he and I pretty much came to the mutual
decision that it was a mistake to have her in the courtroom.  In fact, he told me specifically, I dont
want you to call [Rowland].  Barnett had
clarified to Coyle that he and Mrs. Rowland had gotten into an argument and he
had hit her, struck her.  There was a
misdemeanor charge to that effect, that he essentially beat her up.  He thought that she was not a reliable
witness.  

            Further
information came from a private investigator hired by Coyle, providing perhaps
the most compelling reason why Rowland was not obtained as a witness.  The investigator testified that Rowland had
given him the knife which was used in this case and that he had kept it in his
office.  The investigator told Coyle
about the knife, but its existence was not disclosed to the State, and was
instead kept unrevealed by the investigator after a conference with Coyle.  After the investigators testimony, Coyle was
recalled and explained he was happy that [Rowland] went missing because she
was going to admit that she had the knife. 


            We find that
Coyles conduct in choosing not to call a potentially damaging witness was
probably wise.  It at least fell within
the wide range of reasonable professional assistance and constituted sound
trial strategy, especially since he was aware Rowland had possessed the knife
in question at one point.  Therefore, we find
that Barnett cannot meet the first prong of the Strickland test with respect to this ground of ineffective
assistance.

            b.         Failure
to Seek Finding on Lesser Included Offenses Was Not Substandard

 

            Coyle
testified that, although Barnett believed he should be charged with a lesser
included offense, counsels opinion was that he would likely be convicted of
aggravated assault with a deadly weapon. 
Counsels response as to why he failed to request lesser included
offenses was, I didnt think of it, and, I did not specifically look at the
question of lesser offenses.  Coyle
testified that he would have requested lesser included offenses had he thought
about it. 

            However,
Barnett filed a pro se motion mentioning terroristic threat as a lesser
included offense, which counsel read before trial.  The clerks record also included the police
report from the Sunriser incident, which listed the offense as terroristic
threat and assault.  When questioned
about the motion, counsel then stated that he did discuss the lesser included
offenses.  

            Assuming
that counsels reasoningthat he did not consider lesser included
offensesallows Barnett to meet the first Strickland
prong, we examine whether Barnett would be entitled to a lesser-included-offense
instruction for terroristic threat and assault. 
To determine if a defendant is entitled to a lesser-included-offense
instruction, a two-prong test applies.  Hall
v. State, 158 S.W.3d 470,
473 (Tex. Crim. App. 2005).  First, the
lesser included offense must be included within the proof necessary to
establish the offense charged.  Id.;
Hampton v. State, 109 S.W.3d 437, 440
(Tex. Crim. App. 2003); Lofton v. State,
45 S.W.3d 649, 651 (Tex. Crim. App. 2001); Bignall
v. State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).  If the person uses or exhibits a deadly
weapon while committing assault, he or she commits aggravated assault.  Tex.
Penal Code Ann. § 22.02(a)(2).

            A person
commits assault if he or she intentionally or knowingly threatens another with
imminent bodily injury.  Tex. Penal Code Ann. § 22.01(a)(2).  Assault is a lesser included offense of
aggravated assault.

            A
person commits the offense of terroristic threat if he threatens to commit any
offense involving violence to any person or property with intent to:  . . . (2) place any person in fear of imminent
serious bodily injury.  Tex. Penal Code Ann. § 22.07(a)(2)
(Vernon 2011).  Terroristic threat is not
a lesser included offense in this case, because terroristic threat requires
proof of the intent to place someone in fear of imminent serious bodily
injuryproof that is not required for the charge of aggravated assault in this
case.  See Tex. Code Crim. Proc.
Ann. art. 37.09 (Vernon 2006); see
also Runnels v. State, No. 05-98-01590-CR, 2000 WL 1256305, at *4 (Tex.
App.Dallas Sept. 6, 2000, pet. refd) (mem. op., not designated for
publication); Jones v. State, No.
05-96-01415-CR, 1998 WL 91298, at *45 (Tex. App.Dallas Feb. 26, 1998, no
pet.) (not designated for publication).[1]

            As to the
asserted right to a lesser included offense instruction on assault, we move to
consider the second prong.  To establish
that second prong, some evidence must exist in the record that would permit a
jury rationally to find that, if the defendant is guilty, he or she is guilty
only of the lesser included offense.  Hampton, 109 S.W.3d at 440.  In other words, there must be some evidence
from which a rational jury could acquit Barnett of aggravated assault while
convicting him of the lesser included offense of assault.  In making this decision, we evaluate the
evidence in the context of the entire record, and do not consider whether the
evidence is credible, controverted, or in conflict with other evidence.  Id.

            We have
already found the evidence sufficient to convict Barnett of aggravated
assault.  We note that one element
distinguishing aggravated assault from assault is the use or exhibition of a
deadly weapon.  In his brief, Barnett
argues that:  no evidence was offered as
to the knifes sharpness; Flynn[2]
did not see the Appellant hold the pocket knife near the complainant but
rather saw the tip of the knife in Appellants hand which he held at his side;
although Flynn was a few feet away, she never saw the Appellant try to cut
Bryan nor did she see Appellant shove him; and Wagner did not see anything in
Barnetts hands and testified he did not shove Bryan.  Even assuming these statements were true,
they do not constitute evidence that Barnett did not hold a knife to Bryans
person or otherwise threaten him with it. 
The statements made by Flynn and Wagner address only their observations
from their respective locations in the Sunriser and did not negate the
allegation that Barnett held a pocket knife to Bryans ribs or threatened him
while displaying it.  In other words, the
brief does not reference evidence from which a rational jury could acquit Barnett
of aggravated assault while convicting him of the lesser included offense of
assault.

            We conclude
that, because Barnett cannot meet the Strickland
second prong, Coyles failure to request an instruction on the lesser included
offense of assault did not deny Barnett effective assistance of counsel.

            c.         Failure
to Find and Submit Mitigating Evidence Was Not Substandard

 

            Next, Barnetts motion
and affidavit alleged that counsel failed to offer any mitigating evidence at
punishment, including evidence that Barnett had been diagnosed as having
various mental illnesses, was bipolar, and had treatment at MHMR.  Barnetts affidavit additionally stated, In
fact, my attorney just asked me if I wanted to tell the jury anything.  I did not know what to say.  He just did not ask me any questions. 

            We
interpret Barnetts motion and affidavit as alleging that counsel generally
failed to investigate the possibility of mitigating evidence, including Barnetts
mental condition.  The sentencing stage
of any case, regardless of the potential punishment, is the time at which for
many defendants the most important services of the entire proceeding can be
performed.  Milburn v. State, 15 S.W.3d 267, 269 (Tex. App.Houston [1st Dist.]
2000, pet. refd) (quoting Vela v.
Estelle, 708 F.2d 954, 964 (5th Cir.1983)). 
Where the potential punishment is life imprisonment, as in the instant
matter, the sentencing proceeding takes on added importance.  Id.
(citing Vela, 708 F.2d at 964).  In a case where the issue is whether trial
counsel conducted an adequate investigation for potential mitigating evidence, we
focus on whether the investigation supporting counsels decision not to
introduce mitigating evidence of [Barnetts] background was itself reasonable.  Freeman
v. State, 167 S.W.3d 114, 117 (Tex. App.Waco 2005, no pet.) (quoting Wiggins v. Smith, 539 U.S. 510, 523
(2003)).  While Strickland does not require counsel to investigate every
conceivable line of mitigating evidence, counsel can . . . make a reasonable
decision to forego presentation of mitigating evidence [only] after evaluating
available testimony and determining that it would not be helpful.  Wiggins,
539 U.S. at 533; Milburn, 15 S.W.3d
at 270; see also Williams v. Taylor,
529 U.S. 362 (2000).  Counsels
representation will be deficient, however, if a sufficient pretrial
investigation is not performed.  Wiggins, 539 U.S. at 521; Freeman, 167 S.W.3d at 117.

            Barnetts
medical records from Lakes Regional MHMR Center demonstrate he was diagnosed
with bipolar disorder May 22, 2009, a few months before the incident at the
Sunriser.  Barnett, who had been recently
released from prison after twelve years and could not find employment, also
experienced depression, sleep disorder, problems not eating (reports has lost
45 lbs in 4 months.) isolation, agitation, anger, anxiety, crying spells,
racing thoughts, feelings of hopelessness/worthlessness.  Coyle stated that had he known Barnetts
medical records revealed such conditions, he would have placed that evidence in
front of the jury during punishment. 
However, Coyle did investigate and inquire into the possibility of
mitigating evidence.

            At the hearing
on the motion for new trial, Coyle testified:

 

Mr.
Barnett was a difficult client.  I talked
to him at length as long as I could because he was really hard to talk to about
what I could find to try to mitigate potential punishment.  I didnt find anything.  I finally hit on the only possibility was to talk
to his mother who lives here in Lamar County, Paris[,] I believe, as I
recall.  I talked to his mother.  I talked to her on the phone.  I tried to persuade her to come down and
testify on his behalf.  She wouldnt
come.

 

            Coyle
admitted that he did not specifically inquire about Barnetts past medical
treatment.  Counsel is not required,
however, to always investigate a defendants psychiatric history to meet the
effective-assistance-of-counsel standard.[3]
 See
Purchase v. State, 84 S.W.3d 696, 70001 (Tex. App.Houston [14th Dist.]
2002, pet. refd).  Coyle stated that,
although Barnett was difficult, counsel was not put on notice of any potential
mental issues.  The investigator hired by
counsel also did not discover any mitigating evidence.  When assessing the reasonableness of counsels
investigation, we must consider the quantum of evidence already known to
counsel and whether the known evidence would lead a reasonable attorney to
investigate further.  Martinez, 195 S.W.3d at 721 (citing Wiggins, 539 U.S. at 527).  Barnetts briefing does not suggest any facts
which would lead a reasonable attorney to investigate further, and the record
reveals that, although counsel spoke with Barnett and his mother regarding the
possibility of mitigating evidence, none was uncovered.

            An
investigation into every defendants mental health history is not
required.  Because counsel conducted an
investigation, but no evidence of mental illness was revealed, Barnett cannot
meet the first Strickland prong of
showing counsels substandard actions. 
We overrule this issue.

            d.         Not
Objecting to Particular Evidence Was Not Substandard

 

            Barnett
complains of a few pieces of evidence, the failure to object to which is
alleged to be ineffective on the part of his trial counsel.  Failing to object to the testimony specified
by Barnetts appellate brief was not substandard, because (i) prison disciplinary
records may have been admissible, (ii) the undisclosed expert witness
did not testify as an expert, (iii) failing to object to evidence of prior
arrests may have been reasonable trial strategy, (iv) the voir dire statement
on community supervision was not objectionable, (v) not objecting to Bryans
testimony may have been reasonable trial strategy, (vi) not objecting to
photographs of Rowlands injuries may have been reasonable trial strategy, and
(vii) Pooles victim-impact testimony was admissible.

                        (i)         Prison Disciplinary Records May Have
Been Admissible

 

            Barnett complains that counsel failed to object to
testimony the State elicited from Barnett, during the punishment phase,
regarding his prison and jail disciplinary violations.  The brief suggests that Coyle should have
objected to the testimony on the basis that this evidence was not timely
disclosed.  The Texas Code of Criminal
Procedure provides:

evidence
may be offered by the state and the defendant as to any matter the court deems
relevant to sentencing, including but not limited to the prior criminal record
of the defendant, his general reputation, his character, an opinion regarding
his character, the circumstances of the offense for which he is being tried,
and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other
evidence of an extraneous crime or bad act that is shown beyond a reasonable
doubt by evidence to have been committed by the defendant or for which he could
be held criminally responsible, regardless of whether he has previously been
charged with or finally convicted of the crime or act.

 

Tex. Code Crim. Proc.
Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2010).  Notice of intent to introduce such evidence
must be given by the State if the defendant makes a timely request to the
attorney representing the state for the notice.  Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp. 2010).

            The record
is silent on why counsel failed to object, and we will not speculate on counsels
trial strategy.  See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).  The States notice of intent to introduce
extraneous offenses stated, The State intends to introduce each and every
extraneous offense, crime, wrong and act of the Defendant noted below as well
as those identified in offense reports or other documents and recording
presented in the States file.  The
trial courts discovery order directed the State to disclose [t]he criminal
history of the Defendant as recorded in the TCIC[4]
records together with all other crimes, wrongs and acts of which the
prosecution has actual knowledge. 
Therefore, it is quite possible that counsel failed to object to these
extraneous offenses on the basis of notice under Article 37.07 of the Texas
Code of Criminal Procedure because he had knowledge of such offenses.

            We find
Barnett has failed to meet the first Strickland
prong as to this evidence.

                        (ii)        The Undisclosed Expert Witness Did Not
Testify as an Expert

 

            Barnett also
complains that, although the testifying officer was designated as an expert on
fingerprint identification, he was not disclosed as an expert witness on the
issue of whether the pocket knife constituted a deadly weapon.  Thus, Barnett argues his counsels failure to
object to the officers testimony as an expert witness on the issue of the
deadly-weapon finding constituted ineffective assistance of counsel.  

            Before the
police officer testified to his opinion that the knife was a deadly weapon,
Coyle lodged the objection that, Your Honor, I object.  I dont think this witness is qualified as an
expert under the law.  After Coyle
elicited testimony from the officer that no special training or expertise is
required to draw a conclusion that an object is a deadly weapon, the trial
court sustained the objection and instructed the prosecution, Youll not
designate him as an expert.  However,
the court allowed testimony to the fact that a knife can be a deadly
weapon.  

            Although the
record does not state why Coyle did not object that the officer was not designated
as an expert on the deadly-weapon issue, we assume it was because the officer
testified as just a lay witness on the deadly-weapon issue per the trial
courts ruling.  We may also assume that
Coyle did not object because the law allows the fact-finder to determine
whether an object was a deadly weapon based on lay witness testimony
alone.  Cruz v. State, 576 S.W.2d 841, 842 (Tex. Crim. App. 1979); Bailey v. State, 46 S.W.3d 487, 492 (Tex.
App.Corpus Christi 2001, pet. refd); Bui
v. State, 964 S.W.2d 335, 345 (Tex. App.Texarkana 1998, pet. refd).

            Barnett has
failed to meet the first Strickland
prong as to this evidence.

 

                        (iii)       Failing to Object to
Evidence of Prior Arrest May Have Been Reasonable            Trial
Strategy

 

            Barnett
argues that counsel should have objected to the following direct testimony by
Bryan on the basis that it introduced an extraneous offense:

A.        .
. . I told him I was going to call the law if he didnt settle down.

 

Q.        What
was [Barnetts] response to that?

 

A.        Hecall
the law, Ive been arrested before. 

 

            Because
the record is silent as to why counsel failed to object, we employ the strong
presumption that Coyles conduct, in possibly refusing to draw the jurys
attention to the extraneous offense through an objection, could be considered
sound trial strategy.  Also, the
constitutional right to counsel does not mean Barnetts counsel was required to
be errorless.  Alberts v. State, 302 S.W.3d 495, 507 (Tex. App.Texarkana 2009, no
pet.) (citing Ingham v. State, 679
S.W.2d 503, 509 (Tex. Crim. App. 1984)).  For this reason, an isolated failure to object
to improper evidence does not constitute ineffective assistance of counsel.  Id.  Therefore, we find Barnett cannot meet the first Strickland
prong.

                        (iv)       The Voir Dire Statement on Community
Supervision Was Not                                                          Objectionable

 

            Barnetts
brief complains of the following:

 

During
her voir dire, the prosecutor informed the jury that the range of punishment
for an aggravated assault with a deadly weapon is a second degree felony.  She then informed the jury that if the State
proved a defendant had a prior conviction the punishment range increased from
five to 99 years or life.  The prosecutor
went on to ask the jurors if they could consider the full range of punishment
from 2 years to life in prison.  The
prosecutor went on to make the following comment:

 

Q.        Is there anyone here who cannot consider
the full range of punishment?  This is
really important?  Probation is not an option
in this case, were talking about TDC time. 
Okay?  

 

(References to record omitted.)  Barnett argues the prosecutor specifically
implied to the jury that Appellant had been convicted of a crime, because
[h]ad the State been unable to prove a prior felony conviction, then the range
of punishment would have included the possibility of probation.  

            We do not
agree with Barnetts premise that the State necessarily implied Barnetts prior
conviction when stating community supervision was not an option.  The option of community supervision, even if
otherwise available, may become unavailable under other circumstances, such as
a defendants failure to file an application for community supervision or his
or her decision to forego that option.

            In any
event, both sides have the right to discuss range of punishment.

 

The
Texas Court of Criminal Appeals has stated repeatedly that both the state and
the accused have the right to inform the jury of the range of punishment
applicable to an offense, including a range that is enhanced, and to qualify
the panel on the full range of punishment. Martinez
v. State, 588 S.W.2d 954, 956 (Tex. Crim. App. [Panel Op.] 1979); Bevill v. State, 573 S.W.2d 781, 783
(Tex. Crim. App. 1978).  Under this
formulation, the state may inform the jury panel of the range of punishment
applicable if the state was to prove a prior conviction for enhancement
purposes, but the state may not inform the jury of any specific allegations
contained in an enhancement paragraph of a particular defendants indictment.  Frausto
v. State, 642 S.W.2d 506, 509 (Tex. Crim. App. [Panel Op.] 1982); Estes v. State, 873 S.W.2d 771, 773
(Tex. App.Fort Worth 1994, pet. refd).

 

Jackson v. State,
285 S.W.3d 181, 18384 (Tex. App.Texarkana 2009, no pet.).  Because we do not have counsels reasons for
failing to object, we may presume that it was due to a sound trial
strategy.  Coyle may have believed, as do
we, that the States statements did not inform the jury that Barnett was a
felon, but simply discuss range of punishment. 
Therefore, we find Barnett cannot meet the first Strickland prong on this issue.

(v)        Not Objecting to Bryans Testimony May Have Been Reasonable
Trial Strategy

 

            Bryan testified that Barnett shoved
me away, I guess to prevent me from getting my cell phone out.  Bryan also testified, I very well felt he
would cut me.  Barnett argues that
counsels failure to object to these allegedly speculative statements
constituted ineffective assistance of counsel.

            A witness
can testify in the form of an opinion if that opinion is rationally based on
their perception and is helpful to the determination of a fact issue.  Tex.
R. Evid. 701; White, 160
S.W.3d at 53 (counsel not deficient in failing to object to statement by
witness of her belief  defendant
intentionally drove over victim).  Here,
Bryans statement that Barnett shoved him to prevent Bryan from calling the
authorities came after his testimony that he told [Barnett he] was going to
call the law and that Bryan reached for my cell phone.  It appears that Bryan was testifying based on
his perception and that such testimony was relevant to rebut Barnetts claim of
self-defense, specifically that he shoved Bryan because he believed Bryan was
reaching for a knife.  Counsel may have
also felt Bryans opinion that Barnett would cut me was based on perception
and helpful to the determination of whether Bryan felt threatened by Barnetts
actions.  Again, we do not speculate to
find trial counsel ineffective when the record is silent on counsels reasoning
or strategy.  See Wood v. State, 260 S.W.3d 146, 148 (Tex. App.Houston [1st
Dist.] 2008, no pet.).

            Also,
Barnett complains that Coyle failed to ask for a mistrial after his objection
to the following statement was sustained: 
I believe thatif 911 hadnt been called and the other patrons of the
restaurant and employees come to my aid, I wouldve been cut.  After Coyles objection was sustained, the
court instructed the jury to disregard the statement.  It is possible that counsel failed to seek a
mistrial because (1) he did not believe Bryans statement was so emotionally
inflammatory that the curative instruction was insufficient to remove
prejudice, (2) he did not want to risk any negative impression which may have been
held by the jury if the motion for mistrial was denied, or (3) he presumed the
jury would follow the courts instructions. 
See Gardner v. State, 730
S.W.2d 675, 696 (Tex. Crim. App. 1987).

            We find
that Barnett failed to meet the first Strickland
prong on this issue.

 

                        (vi)       Not Objecting to Photographs of Rowlands
Injuries May Have Been          Reasonable
Trial Strategy

 

            Barnett complains that
Coyle failed to object during punishment to photographs of Rowlands injuries,
which a police officer, from her personal knowledge, testified appeared on
Rowland on the day of the Sunriser incident. 
Barnett argues that, because Rowland was not available to testify, the
State had no evidence that Appellant had inflicted any injuries on
Rowland.  Therefore, the evidence was
irrelevant and constituted hearsay. 
Barnett agrees that the State can introduce evidence of extraneous
offenses regardless of whether [Barnett] was previously charged if the act was
committed by him.  

 

            Again,
we are not provided with counsels reasons for failing to object.  Counsel was aware, however, that Barnett
planned to testify during punishment. 
Barnett did not deny becoming involved in a physical altercation with
Rowland.  He stated that they started
arguing about . . . whether we should go to the casino and that Rowland was
driving real fast talking about she was going to kill me and her both.  She was going to commit suicide.  I reached over and killed the truck.  Barnett claimed they began fighting over car
keys.  To describe the altercation, he
used the following words and phrases: 
we were wrestling, [w]e struggled, I tried to hold her in the
truck, I finally pushed her off, and Im just trying to hold her,
really.  Thats how the red marks got on
her face and her nose.  Barnett admitted
that the injuries depicted on Rowland were caused by him, but attempted to
justify the actions causing the injuries as innocent struggle[s] over the
key.  

            Therefore,
it is possible that counsel decided not to object to the photographs because he
was aware Barnett was going to testify and that, if any objection to the
photographs were sustained during the officers testimony, they could be
reintroduced during Barnetts testimony. 
We find Barnett has failed to meet the first prong of Strickland on this issue.

                        (vii)      Pooles Victim-Impact Testimony Was Admissible

 

            Shelia Poole
was a victim of an earlier assault by Barnett. 
She testified, [Barnett] carried me out to the woods and started
beating . . . [a]nd he beat me over and over and over.  Poole said Barnett beat her with 

[e]verything he could find, fly swatters, toy
guns, his fists.  He put rocks in a
shirthe says, it was a shirtbeat me with that.  Drug me back and forth. . . . [f]rom one spot
to the other in the woods.  He would jump
up and down on my back.  I would pass
out.  Whenever I would come to, he would
still be beating me.  Finally he got
tired.  After about 36 hours or something
like that, he got tired and laid down and I got away. . . . He beat me between
my legs with a toy gun. . . . [and said] he would make it where no other man
would ever want to touch me.

 

            Barnett
takes exception to Pooles testimony recalling, I was bruised from head to
toe, all over my body.  I did get a head
injury out of it.  Thats why Im on
disability.  He also complains that
Poole testified that she was not able to work and lives on disability as a
result of the incident.  Barnett argues
that counsel was ineffective in failing to object to Pooles statements as
impermissible victim-impact testimony. 
He cites authority that, although the trial court has wide discretion to
admit relevant evidence during the punishment phase of trial, victim-impact
testimony regarding a victim not named in the indictment is inadmissible.  Haley v.
State, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005) (evidence from mother of
extraneous murder victim disallowed); Cantu
v. State, 939 S.W.2d 627, 637 (Tex. Crim. App. 1997) (same).  Note, however, the scope of the
definition.  Victim-impact evidence is
that which shows the collateral effect of an offensethat is, the effect on
people other than the victim of the offensewhether the offense being
referenced by the evidence is the charged offense or an extraneous one.  Roberts
v. State, 220 S.W.3d 521, 531 (Tex. Crim. App. 2007).  Thus, evidence from victims of extraneous
offenses is admissible; it is not victim-impact evidence.  Smith
v. State, 238 S.W.3d 512, 515 (Tex. App.Houston [1st Dist.] 2007, no pet.)
(citing Roberts, 220 S.W.3d at 531)
(testimony in sentencing phase of trial by victim of extraneous robbery who
described how robbery emotionally affected her not victim-impact
evidence).  Because Pooles testimony was
admissible, we conclude Coyle was not required to object to it.  Barnett cannot meet the first Strickland prong as to this evidence.[5]

            Because
Barnett cannot meet the requirements of Strickland
for any of his ineffective-assistance-of-counsel claims omitted from the
discussion during the trial courts hearing on the motion for new trial, we
overrule these ineffective assistance points of error.

(3)        Officers Testimony
that the Knife Was a Deadly Weapon Was Lay Testimony

 

            Barnett complains that the trial
court erred in allowing a police officer to testify as an expert concerning the
deadly weapon issue.  This point is
without merit.  The record demonstrates
that, after an objection by Coyle, and argument that an expert is not required
for testimony on the deadly weapon issue, the trial court ruled, Youll not
designate him as an expert.  The trial
court allowed the officer to testify to the fact that a knife can be a deadly
weapon as a lay witness.  See Cruz, 576 S.W.2d at 84243; Bui, 964 S.W.2d at 345 (expert
testimony not required for deadly weapon finding).  We overrule this point of error.

(4)        Appellate Complaint of
Bolstering Was Not Preserved

 

            Barnett next argues that the
trial court erred in allowing the police officers testimony over objections
that the testimony constituted improper bolstering.  The complained-of exchange is set forth
below:

            [States Attorney]:      Your Honor, I think weve laid pretty good
predicate for Sergeant Springers qualifications.  He is qualified to render an expert opinion
on whether or not a weapon was used in a manner that it was capable of causing
death or serious bodily injury.  He is
capable of describing and giving opinion testimony of the usage of a deadly
weapon, sir.  We move that he be
designated as an expert. 

 

            [Defense Attorney]:    Your Honor, I object.  The witness has testified that it doesnt
require special training, but this is something within the ordinary body of
knowledge of any ordinary person.  It
depends entirely on the circumstance.  It
doesnt require an expert.  What theyre
trying to do is bolster their testimony by putting on an expert witness to
testify to something thats within the ordinary province of the jury.  I object to using expert testimony just to
bolster their case.

 

Coyles objection to the court regarding bolstering
complained only of the officers testimony as an expert witness.  The trial court sustained counsels
objection.  Because Barnett received the
relief requested, this point of error is not preserved for our review.  Tex.
R. App. P. 33.1.[6]

(5)        Barnett Was Not Entitled to the Appointment
of a Different Attorney

 

            After two previous attorneys had
withdrawn from their representation of Barnett, the trial court appointed Coyle
to the case.  Barnett filed a pro se
motion for the Court to appoint either new counsel or allow him to proceed pro se. 
After the court made it clear that [Barnett] would be allowed to
represent himself but would be held to the standards of a lawyer, [Barnett]
asked to allow trial counsel to remain. 
Prior to voir dire, the following exchange occurred:

            [Defendant]:   I have been forced to keep this lawyer, yes. . . .  I agreed not to represent myself. 

 

            THE
COURT:            Im
denying all your motions. 

 

            [States Attorney]:      Mr. Barnett, were not going to be back
here on ineffective assistance of counsel. 
You have an absolute right to represent yourself. 

 

            [Defendant]:   He is ineffective. 

 

            [States Attorney]:     You
have an absolute right to represent yourself, and we brought that to your
attention. 

 

            [Defendant]:   I dont want to represent myself, but this guy is
ineffective.  He says so in that motion
that he filed to withdraw, and I filed a motion to terminate him.

 

            [Defense
Attorney]:  . . . Your Honor, I renew my
motion to withdraw.  If Mr. Barnett wants
me off the case, thats fine with me.  

 

The trial court denied the motion to withdraw. 

 

            We
review a trial courts denial of a motion to withdraw for abuse of discretion.  King v.
State, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000).  A trial judge is under no duty to search
until he finds an attorney agreeable to the defendant.  Lyles v.
State, 582 S.W.2d 138, 141 (Tex. Crim. App. [Panel Op.] 1979); Webb v. State, 533 S.W.2d 780, 784 (Tex.
Crim. App. 1976).  Once the court has
appointed an attorney to represent the indigent defendant, the defendant has
been accorded the protections provided under the Sixth and Fourteenth
Amendments and Article 26.04 of the Texas Code of Criminal Procedure, and the
defendant then carries the burden of proving entitlement to a change of
counsel.  Webb, 533 S.W.2d at 784.  Barnett argues that the trial court erred in
continuing Coyles representation because [t]he relationship between Appellant
and trial counsel was so adverse as to render counsel ineffective in
representing the Appellant.  The record
demonstrates that Barnett was a difficult client, which resulted in the trial
court granting two motions to withdraw from attorneys previously appointed to
represent Barnett.  However, because
personality conflicts and disagreements concerning trial strategy are
typically not valid grounds for withdrawal, we find that the trial court did
not abuse its discretion in declining appointment of new counsel on the day of
trial.  King, 29 S.W.3d at 566.  This point of error is overruled.

(6)        The Mistrial Motion Was Properly Denied

 

            The trial court had granted a
motion in limine to prevent introduction of evidence that Barnett had given
Rowland a bullet with her name on it after the incident, and had determined
that such evidence was irrelevant.  While
questioning a witness, the State asked, Did you see that bullet that [Rowland]
had?  The question drew an immediate
objection and counsel request[ed] an instruction of the jury and mov[ed] for a
mistrial.  The trial court instructed
the jury, You disregard anything she said about a bullet or whatever. 

            We review a
trial courts denial of a motion for mistrial under an abuse-of-discretion
standard and must uphold the trial courts ruling if it was within the zone of
reasonable disagreement.  Towery v. State, 262 S.W.3d 586, 598 (Tex.
App.Texarkana 2008, pet. refd) (citing Archie
v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007)).  Mistrial is an appropriate remedy only when
objectionable events are so emotionally inflammatory that curative
instructions are not likely to prevent the jury from becoming unfairly
prejudiced against the defendant.  Hines v. State, 269 S.W.3d 209, 215
(Tex. App.Texarkana 2008, pet. refd, untimely filed; pet. refd [2 pets.])
(quoting Young v. State, 137 S.W.3d
65, 71 (Tex. Crim. App. 2004)).

            Here, the
trial court instructed the jury to disregard the question about the bullet, an
instruction we presume the jury followed.  Ladd v.
State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).  When evaluating the effectiveness of a
curative instruction to disregard, we look to the nature of the [improper
comment]; the persistence of the prosecutor; the flagrancy of the violation;
the particular instruction given; the weight of the incriminating evidence; and
the harm to the accused as measured by the severity of the sentence.  Searcy
v. State, 231 S.W.3d 539, 549 n.10 (Tex. App.Texarkana 2007, pet. refd)
(quoting Roberson v. State, 100
S.W.3d 36, 41 (Tex. App.Waco 2002, pet. refd)).

            The
witness did not respond to the States question.  No reference was made in the question that
Barnett had provided Rowland with the bullet, or that the bullet had her name
on it.  The State apologized for the
mistake and did not mention the bullet thereafter.  The jury was instructed to disregard anything
said about the bullet, which the court had ruled previously was
irrelevant.  Because the question asked,
by itself, did not indicate any bad act by Barnett, we find that the
instruction cured any improper comment. 
Because the curative instruction was sufficient, we conclude the trial
court did not err in denying the motion for mistrial.

            This point
of error is overruled. 

 

(7)        A Definition of Serious
Bodily Injury Was Not Required

 

            Barnett also asserts that the
trial court erred by failing to include the statutory definition of serious
bodily injury in the jury charge.  A
jury charge should set forth the law applicable to the case.  Tex.
Code Crim. Proc. Ann. art. 36.14 (Vernon 2007).  When alleged jury charge errors are brought
forward on appeal, we must first determine whether they are error.  Abdnor
v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); Remsburg v. State, 219 S.W.3d 541, 547 (Tex. App.Texarkana 2007,
pet. refd).  We then determine whether
the appellant preserved the alleged error at trial.  Remsburg,
219 S.W.3d at 547.  Because Barnett did not object during trial, the
appropriate standard [of review] is the one for fundamental error in the
charge.  Id. (citing Jimenez v. State,
32 S.W.3d 233, 239 (Tex. Crim. App. 2000)); see
also Stokes v. State, 74 S.W.3d
48, 50 (Tex. App.Texarkana, pet. refd).  This standard means we should not reverse the
trial courts judgment unless the error appearing from the record was
calculated to injure the rights of the defendant, or unless it appears from the
record that the defendant has not had a fair and impartial trial.  Id. (citing
Tex. Code Crim. Proc. Ann. art.
36.19 (Vernon 2006); Abdnor, 871
S.W.2d at 732)).  The degree of harm
demonstrated must be actual, not merely theoretical.  Almanza
v. State, 686 S.W.2d 157, 174 (Tex. Crim. App. 1984) (op. on rehg); Taylor v. State, 146 S.W.3d 801, 804 (Tex.
App.Texarkana 2004, pet. refd).

            Barnetts
claim is analogous to the facts of Remsburg.  Remsburg was charged with aggravated assault
on a public servant.  Remsburg, 219 S.W.3d at 547.  The indictment alleged that Remsburg did
intentionally or knowingly cause bodily injury to Greg Wilson, a public servant
. . . and the defendant did use or exhibit a deadly weapon during the
commission of the assault.  Id.  Because the State was not required to prove
Wilson suffered serious bodily injury, and the term did not appear in the
indictment, we held that submission of a separate definition of serious bodily
injury would be relevant only to further explain the definition given by the
trial court for the term deadly weapon. 
Id. at 54748.  We further found the briefing in Remsburg insufficient as it failed to
show what evidence in the record demonstrate[d] actual harm.  Id. at
548.

            Similarly,
in this case the State alleged Barnett did then and there intentionally and
knowingly threaten imminent bodily injury to James Bryan by threatening to cut
James Bryan and the defendant did use or exhibit a deadly weapon during the
commission of the assault, to-wit:  a
knife.  As in Remsburg, the State was not required to prove that Bryan suffered
serious bodily injury, the term serious bodily injury did not appear in the
indictment, and the trial court defined deadly weapon as one capable of
causing death or serious bodily injury. 
Also as in Remsburg, Barnetts
briefing has failed to demonstrate actual harm in light of the trial courts
deadly weapon definition.  Therefore, we
overrule this point of error.

            For
the reasons given, we affirm the trial courts judgment.

 

 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          June
8, 2011    

Date Decided:             June
14, 2011

 

Publish

 











[1]Although
these unpublished cases have no precedential value, we may take guidance from
them as an aid in developing reasoning that may be employed.  Carillo
v. State, 98 S.W.3d 789, 794 (Tex. App.Amarillo 2003, pet. refd). 





[2]Flynn
testified she saw Barnett standing in the doorway with his hand down to his
side after she turned back around, meaning that she did not witness the
entire altercation.  Wagner also
testified that she did not witness the entire altercation. 





[3]During
the hearing on the motion for new trial, the investigator hired by Coyle stated
that Rowland had informed him they were both extremely opposite of each
other.  She said they wereI dont know
if she used the term bipolar.  She said
she was bipolar.  She says, when Im up,
hes got to be downwhen hes down, Ive got to be up, and when Im down, hes
got to be up, to protect each other.  We
do not know whether this specific communication was relayed to counsel.





[4]TCIC
may refer to the Texas Crime Information Center. 





[5]Had
we found that Barnett was able to meet the first prong of Strickland on any claim of ineffective assistance of counsel during
punishment, he would also be required to demonstrate that there was a
reasonable probability that the result of the proceeding would have been
different absent counsels error.  Strickland, 466 U.S. at 68788.  We would look to the sentence to begin the
analysis.  We note that, after finding
Barnett had previously been convicted of two felonies, the jury was instructed
that the punishment range was not less than twenty five (25) years nor more
than ninety-nine (99) years or Life. 
The jury assessed punishment of fifty years imprisonment.  We would also look to the evidence presented
during punishment.  The jurys punishment
assessment followed proof of prior convictions including one charge of
aggravated assault with a deadly weapon, one charge of injury to a child, one
charge of theft, two charges of possession of marihuana, one charge of criminal
mischief, one charge of proof of financial responsibility, one charge of
driving while intoxicated, and one charge of failure to maintain insurance. 





[6]Moreover,
improper bolstering occurs when one item of evidence is improperly used by a
party to add credence or weight to some earlier unimpeached piece of evidence
offered by the same party.  Guerra v. State, 771 S.W.2d 453, 474
(Tex. Crim. App. 1988).  Barnetts brief
fails to address what earlier unimpeached piece of evidence would be
bolstered by the officers testimony. 
Thus, Barnetts briefing would also be inadequate to preserve this error
for our review.