Johnny Louis STOKES, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–01–00066–CR.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 31, 2002.

Decided Feb. 7, 2002.

Rehearing Overruled March 6, 2002.

---

Clement Dunn, Longview, for appellant.

Andy Porter, Asst. Dist. Atty., Longview, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Johnny Stokes pled not guilty to a charge of aggravated robbery. A jury convicted him and assessed punishment at seventy-five years' imprisonment and a fine of $10,000.00. Stokes contends an omission from the jury charge, to which he did not object, was so egregious that it requires reversal.

On August 31, 2000, Stokes was released on parole for a 1987 kidnapping conviction.

Within seventy days of his release, he committed the aggravated robbery in this case. In the commission of this offense, Stokes pulled Zama Dee Little from her 2000 Ford Explorer, causing her to fall and fracture her pelvis. Stokes then fled in the Explorer and was arrested later that night while driving the stolen vehicle.

At the punishment phase of the trial, the court presented the State and Stokes with the proposed jury charge. Neither side objected to the charge. Stokes appeals the punishment, contending he suffered egregious harm because the court's charge failed to instruct the jury in compliance with the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Vernon Supp.2002).

Stokes contends he should have a new trial on punishment because of an omission in the jury charge. He claims, and the State concedes, the trial court failed to charge the jury correctly by failing to include the mandatory language of Article 37.07, § 4(a). That section provides that, where the jury has found the defendant guilty of aggravated robbery, the court shall charge the jury in the penalty phase of trial as follows:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be

imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 4(a).

■ When the appellant fails to preserve for appeal an alleged error in the jury charge, the "appropriate standard [of review] is the statutory one for fundamental error in the charge." *Jimenez v. State*, 32 S.W.3d 233, 239 (Tex.Crim.App.2000); *see also* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981); *Hill v. State*, 30 S.W.3d 505, 507 (Tex.App.-Texarkana 2000, no pet.). Article 36.19 establishes the standard for fundamental error in the court's charge: "the judgment shall not be reversed ... unless it appears from the record that the defendant has not had a

fair and impartial trial." TEX.CODE CRIM. PROC. ANN. art. 36.19; *Jimenez*, 32 S.W.3d at 238, *citing Almanza v. State*, 686 S.W.2d 157, 172 (Tex.Crim.App.1984) (op. on reh'g).

■ Therefore, in our harm analysis, we look to see whether it appears from the record that the charge resulted in such egregious harm Stokes did not have a fair and impartial trial. *See Jimenez*, 32 S.W.3d at 238; *Almanza*, 686 S.W.2d at 171. Further, under *Almanza*, it is the appellant's burden on appeal to show that such harm occurred.

■ We determine harm in light of the entire jury charge, the state of the evidence (including contested issues and the weight of the probative evidence), the argument of counsel, and any other relevant information revealed by the record as a whole. *Hill*, 30 S.W.3d at 507, *citing Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App.1998); *Rudd v. State*, 921 S.W.2d 370, 373 (Tex.App.-Texarkana 1996, pet. ref'd). However, direct evidence of harm is not necessary to establish egregious harm. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App.1996); *Hill*, 30 S.W.3d at 507–08.

■ We first look to the jury charge. The trial court failed to give the instructions required by Article 37.07, § 4(a). Stokes contends the jury therefore had to assess punishment without any information about the law concerning parole. The only reference to parole contained in the court's instructions was:

YOU ARE INSTRUCTED THAT IN DETERMINING THE PUNISHMENT IN THIS CASE, YOU ARE NOT TO DISCUSS AMONG YOURSELVES HOW LONG THE DEFENDANT WILL BE REQUIRED TO SERVE ANY SENTENCE YOU DECIDE TO IMPOSE. SUCH MAT-

TERS COME WITHIN THE EXCLU-
SIVE JURISDICTION OF THE
BOARD OF PARDONS AND PA-
ROLES.

Under Article 37.07, § 4(a), the jury is "not to consider the manner in which the parole law may be applied to this particular defendant."

■ It is presumed a jury follows and understands a court's charge unless there is evidence to the contrary. *Hutch v. State,* 922 S.W.2d 166, 172 (Tex.Crim.App. 1996). The charge instructed the jury not to discuss among themselves how long Stokes might serve. Article 37.07, § 4(a) provides that, while the jurors may consider the existence of parole law, they are not to consider the manner in which the parole law may be applied to this particular defendant. Applying the presumption the jury followed its instructions, Stokes suffered no harm because the jury was directly and explicitly told not to discuss how much time he might serve.

■ Although direct evidence of harm is not required, Stokes has the burden to show harm. *See id.* at 171; *Hill,* 30 S.W.3d at 507; *Almanza,* 686 S.W.2d at 171. Stokes contends egregious harm occurred at the punishment phase of trial by the admission into evidence of his six prior felony convictions. But we note Stokes was the first to introduce evidence concerning his criminal past during his testimony at the guilt/innocence phase of the trial, and further, the admission of Stokes' prior criminal record was appropriate under Article 37.07, § 3(a)(1). *See* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2002). Although the admission of his prior crimes may have caused him harm, that admission was proper.

■ Stokes contends the prosecutor's closing argument encouraged the jury to consider the effect of parole in assessing its sentence and this caused him egregious harm. However, a review of the entire argument reveals a proper plea for law enforcement. *See McFarland v. State,* 989 S.W.2d 749, 751 (Tex.Crim.App.1999); *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex. Crim.App.1988). Although the prosecutor pointed out that in forty-four years of life Stokes had been sentenced to eighty-four years in prison, this argument could have been for the purpose of pointing out that every time Stokes was given another chance, he chose to reoffend. The prosecutor requested the jury to "punish the act, hurting this lady in the aggravated robbery." He also reminded the jury that none of Stokes' crimes were "victimless." He asked the jury:

> What's it worth? What's it worth for this heinous crime—and I think it's a heinous crime. When you pull this lady out and you leave her there for who knows what happens to her, because you're not going to be concerned, you're just driving along—what's it worth for that criminal act and this criminal actor who sits right over there?

He points out it was less than seventy days from the time Stokes was released on his kidnapping conviction to when he committed aggravated robbery. The prosecutor discussed Stokes' progression of convictions from theft to kidnapping to aggravated robbery. Stokes counters by pointing to his testimony that he did not intend to harm Little. However, Little testified Stokes grabbed her and pulled her from the vehicle, causing her to fall and fracture her pelvis. Also, Stokes admitted in his statement to the police he grabbed Little and pulled her from the vehicle.

The jury assessed seventy-five years' confinement, which is between the requests of the prosecution (who wanted imprisonment for life) and Stokes (who requested thirty to forty years). In looking

at the entire closing argument, we find the prosecutor properly argued for law enforcement.

 Finally, in examining other relevant material, Stokes contends the court's colloquy with the jury following the formal verdict on punishment demonstrates the charge error caused egregious harm. During jury deliberation, the jury sent the judge a note. After the verdict, the judge asked the presiding juror, "The first note you sent out wanted to know whether I could change or override your verdict. I'm puzzled by that. What was the concern?" The presiding juror said the jury was concerned the trial court would feel the verdict was either to one or the other extreme. The judge assured the jury it was not within the court's authority to change the jury's verdict. Nothing in this exchange indicates whether the jury improperly considered Stokes' parole eligibility in reaching its verdict. There is nothing to indicate the jury feared its verdict on punishment would not be long enough to keep Stokes from achieving an early parole.

Stokes has failed to show this colloquy caused egregious harm. We find Stokes has failed to meet his burden of proving egregious harm. A review of the entire record reflects Stokes received a fair and impartial trial. *See Jimenez*, 32 S.W.3d at 238.

We affirm the judgment.