NO. 12-01-00326-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 


IRMA LUNA,
§
 APPEAL FROM THE 124TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 GREGG COUNTY, TEXAS






MEMORANDUM OPINION
 

 Irma Luna ("Appellant") pleaded guilty to aggravated assault, and the jury assessed
punishment at four years of imprisonment. In two issues, Appellant argues that the trial court erred
by failing to properly instruct the jury. We affirm.


Background

 Appellant was charged by indictment with aggravated assault for "intentionally, knowingly,
or recklessly caus[ing] bodily injury to Alice Castillo by shooting her with a firearm and did then and
there use a deadly weapon, to wit: a firearm" on July 10, 2001. (1) Appellant pleaded guilty but elected
to have the jury determine punishment. (2)

 At the punishment hearing, the prosecutor questioned Appellant regarding one of her former
husbands. Appellant admitted that the former husband in question was killed and burned in Lufkin.
However, she denied that she was in Lufkin when the incident occurred, that the house was burned,
and that her former husband was found shot and burned in the house. Also, the prosecutor
introduced into evidence an application for a protective order in Appellant's divorce filed on June
29, 2001. The order stated that Appellant had committed acts that would result in physical harm,
bodily injury, assault, or threats that would reasonably place her husband, Jesus Rios Luna ("Luna"),
in fear of imminent physical harm, bodily injury, or assault, constituting family violence. Appellant
denied threatening Luna. (3) Further, she testified that Luna was arrested and charged with family
violence for assaulting her. 

 At the close of evidence, the court asked if there was "any problem" with the charge. 
Appellant's counsel responded that he had "no objections to the charge." However, the jury charge
lacked the mandatory parole law instruction required by article 37.07, section 4(a) of the Texas Code
of Criminal Procedure. (4) Instead, the charge contained the following instruction:


You are instructed that in determining the punishment in this case, you are not to discuss among
yourselves how long the defendant will be required to serve any sentence you decide to impose. Such
matters come within the exclusive jurisdiction of the Board of Pardons and Paroles.


Additionally, the jury charge did not contain a reasonable doubt instruction on extraneous offenses. 
In closing arguments, Appellant's counsel asked for probation while the prosecutor requested a
sentence of between twelve and fifteen years of imprisonment. The jury found Appellant guilty of
aggravated assault and assessed punishment at four years of imprisonment. This appeal followed.


Mandatory Parole Instruction

 In her first issue, Appellant argues that the trial court erred by failing to include the
mandatory parole law instruction in the jury charge. She admits that she may have waived error by
her failure to timely object and request submission of the parole law instruction. However, she
contends that she was egregiously harmed by this omission. The State agrees that the trial court
should have given the statutory jury instruction. Nonetheless, the State argues that Appellant waived
error because she did not object or request the instruction or, in the alternative, that Appellant was
not egregiously harmed by this omission.

Applicable Law

 Article 37.07, section 4(a) provides that, if a judgment contains an affirmative finding under 
article 42.12, section 3g(a)(2), (5) the court must give the following instructions to the jury in the
penalty phase of the trial of a felony case:


 Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn
time off the period of incarceration imposed through the award of good conduct time. Prison
authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in
carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in
misconduct, prison authorities may also take away all or part of any good conduct time earned by the
prisoner.


 It is also possible that the length of time for which the defendant will be imprisoned might be reduced
by the award of parole.


 Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will
not become eligible for parole until the actual time served equals one-half of the sentence imposed or
30 years, whichever is less, without consideration of any good conduct time he may earn. If the
defendant is sentenced to a term of less than four years, he must serve at least two years before he is
eligible for parole. Eligibility for parole does not guarantee that parole will be granted.


 It cannot accurately be predicted how the parole law and good conduct time might be applied to this
defendant if he is sentenced to a term of imprisonment, because the application of these laws will
depend on decisions made by prison and parole authorities.


 You may consider the existence of the parole law and good conduct time. However, you are not to
consider the extent to which good conduct time may be awarded to or forfeited by this particular
defendant. You are not to consider the manner in which the parole law may be applied to this
particular defendant. 


Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2003).

 The purpose of a jury charge is to inform the jury of the relevant law and guide them in its
application to the case. Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). A court is
statutorily mandated to deliver to the jury a written charge distinctly setting forth the law applicable
to the case. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2003). A judge has no
discretion to ignore statutory requirements. Edwards v. State, 10 S.W.3d 699, 702 (Tex. App.-
Houston [14th Dist.] 1999), pet. dism'd, 67 S.W.3d 228 (Tex. Crim. App. 2002) (per curiam) (citing
McGee v. State, 711 S.W.2d 257 (Tex. Crim. App. 1986)). The parole law instruction is a
"legislatively-mandated statement of the law applicable to the punishment phase of the trial." 
Luquis v. State, 72 S.W.3d 355, 363 n.18 (Tex. Crim. App. 2002); Muhammad v. State, 830
S.W.2d 953, 955-56 (Tex. Crim. App. 1992) (parole law instruction is "an instruction on the law
applicable to [the] case"). Thus, a trial court errs by failing to include the mandatory statutory parole
instruction in the jury charge. Grisby v. State, 833 S.W.2d 573, 576 (Tex. App.- Dallas 1992, pet.
ref'd).

 Any error committed by the court in not charging the jury with the parole law instruction is
waived if a defendant fails to timely object and request submission of the instruction, unless the harm
was egregious. Jones v. State, 859 S.W.2d 537, 542 (Tex. App.- Houston [1st Dist.] 1993, pet.
ref'd) (citing Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984)). The standard for
egregious harm is based on article 36.19 and explained in Almanza. See Stokes v. State, 74 S.W.3d
48, 50 (Tex. App.- Texarkana 2002, pet. ref'd); Shavers v. State, 985 S.W.2d 284, 291 (Tex. App.-
Beaumont 1999, pet. ref'd). In Almanza, the court determined that, if no proper objection was made
at trial to charge error, the accused must claim this error was "fundamental," and will obtain a
reversal only if the error is so egregious and created such harm that the accused did not have a fair
and impartial trial. Almanza, 686 S.W.2d at 171. Further, in evaluating the degree of harm, jury
charge error should be examined in view of the entire jury charge, the state of the evidence, including
the contested issues and weight of the probative evidence, the argument of counsel, and any other
relevant information revealed by the record of the trial as a whole. Id.; see also Hutch v. State, 922
S.W.2d at 171. To establish egregious harm, it is not essential to show direct evidence of harm. 
Stokes, 74 S.W.3d at 50. However, Appellant is required to show actual, not theoretical, harm. 
Cormier v. State, 955 S.W.2d 161, 164 (Tex. App.- Austin 1997, no pet.). 

Analysis

 Appellant pleaded guilty to causing bodily injury by shooting the victim with a firearm and
using a deadly weapon as charged in the indictment. Therefore, according to article 37.07, section
4(a), the jury charge should have included the mandatory parole law instruction. Appellant admits
that she failed to timely object or request an instruction. However, she contends that she was
deprived of a fair and impartial trial because the jury imposed institutional time without community
supervision. The State argues that Appellant's sentence was at the low end of the statutory range and
that there is no evidence the jury would have given Appellant community supervision if the charge
had included the mandatory parole law instruction. Although Appellant has the burden to show
egregious harm, her brief is conclusory. See Stokes, 74 S.W.3d at 51. Appellant fails to describe
any justification or reason for a determination that she would have received community supervision
if the parole law instruction had been included in the jury charge. As such, we will neither surmise
nor devise our own conclusions absent some cogent argument on Appellant's behalf that, by the
court's failure to include the parole law instruction in the charge, she was deprived of a fair and
impartial trial. Therefore, Appellant failed to show egregious harm from omission of the mandatory
parole law instruction. Accordingly, Appellant's first issue is overruled.


Reasonable Doubt Instruction

 In her second issue, Appellant argues that the trial court erred in failing to include a
reasonable doubt instruction for extraneous offenses in the jury charge. Appellant contends that she
was egregiously harmed by this omission. The State admits that a reasonable doubt instruction
should be given when extraneous offenses are presented to the jury, but contends that Appellant was
not egregiously harmed.

Applicable Law

 As previously stated, a court is statutorily mandated to deliver to the jury a written charge
distinctly setting forth the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14. 
Article 37.07, section 3(a)(1) provides that evidence of extraneous offenses or bad acts may not be
considered in assessing punishment until the fact finder is convinced beyond a reasonable doubt that
such offenses are attributable to a defendant. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
(Vernon Supp. 2003); Huizar v. State, 12 S.W.3d 479, 481 (Tex. Crim. App. 2000). At the
punishment phase, the reasonable doubt instruction is a statutory requirement, not a constitutional
one. See Huizar, 12 S.W.3d at 482-83. Moreover, the requirement that the fact finder be satisfied
of a defendant's culpability in the extraneous offenses and bad acts is "law applicable to the case"
in the non-capital punishment context. Id. at 484. Because the omission of a reasonable doubt
instruction is a statutory requirement and law applicable to the case, an appellant is not required to
make an objection or request in order for the court to instruct the jury. Id. at 483-84. Therefore,
section 3(a) is subject to sua sponte submission, and a trial court's failure to include this instruction
in the jury charge is error. Id. Where, as here, no objection to the error is made at trial, the standard
for assessing this charge error is egregious harm. Id. at 483-85; Shavers v. State, 985 S.W.2d at 291;
Roberts v. State, 849 S.W.2d 407, 409 (Tex. App.- Fort Worth 1993, pet. ref'd). 

Analysis

 Appellant argues that omission of the reasonable doubt instruction caused her egregious harm
because, without hearing evidence of the protective order and her prior husband's death, she would
have received a probated sentence. Further, she contends that there was conflicting evidence
regarding her commission of the acts alleged in the protective order and there was no evidence
connecting her to the offenses against her former husband. The State contends that Appellant's
punishment was reasonable under the facts of the case and that there was sufficient evidence to
justify a non-probated sentence. We evaluate the charge error in light of the entire jury charge, the
state of the evidence, the argument of counsel and the record of the trial as a whole. Almanza, 686
S.W.2d at 171.

 On July 10, 2001, Appellant admitted that she "chased" the victim, Alice Castillo
("Castillo"), in her truck after the victim left Luna's residence. Appellant eventually stopped behind
Castillo's vehicle in a parking lot, grabbed a gun in the console of the truck, approached Castillo's
vehicle, and shot Castillo through the driver's window. Castillo was shot in the arm. As Castillo
fled, Appellant fired more shots and one bullet hit the passenger side of Castillo's vehicle.
Approximately two days later, Appellant turned herself in to the police.

 Appellant stated that she kept shooting at Castillo because she was mad and wanted to scare
her. Appellant believed that Castillo was having an affair with Luna. Nonetheless, Appellant denied
that her actions were planned, that she intended to kill Castillo, or was "lying in wait" for Castillo. 
However, Appellant knew Luna kept a gun in the truck she was driving and thought Castillo might
be dead because she shot the victim through the vehicle's window. Further, Appellant testified that
she drove five miles from her home to the convenience store across the street from Luna's residence. 
Appellant testified that she didn't "think [she] would do it again," that she learned her lesson, and
that Castillo was in no danger. However, she blamed Castillo for her pending divorce from Luna.

 Appellant admitted that one of her former husbands was killed and burned in Lufkin. 
However, she denied that she was in Lufkin when the incident occurred, that the house was burned, 
or that the victim was found shot and burned in the house. The State did not question Appellant
further regarding this incident nor did the State or Appellant's counsel mention the incident in
closing arguments. Instead, the State focused on Appellant's commission of the charged offense. 
There is no evidence that the jury connected Appellant to the offense in Lufkin.

 Additionally, the State questioned Appellant regarding an application for a protective order. 
Luna sought the order against Appellant contending that he was in fear of imminent physical harm,
bodily injury, or assault, constituting family violence. Appellant admitted that the order was filed
approximately eleven to twelve days before the shooting of Castillo. However, Appellant denied
threatening Luna and testified that, after the protective order was entered, Luna continued to call and
look for her. She also testified that Luna was arrested and charged with assaulting her. The State
never mentioned the protective order in closing arguments. Appellant's counsel pointed out that the
protective order was filed in connection with Luna's divorce action against Appellant and that Luna,
not Appellant, had been arrested for family violence. Thus, while there are disputed allegations
against Appellant in the protective order, there is no evidence that the jury considered these
allegations in assessing punishment.

 Appellant must show that she suffered actual, not theoretical, harm. Cormier, 955 S.W.2d
at 164. However, Appellant offers no evidence that the jury would have given her probation if the
jury charge had included a reasonable doubt instruction for these extraneous offenses. Further, the
jury could have concluded that the record as a whole supported punishment of four years of
imprisonment without probation, without considering the allegations of extraneous offenses. Finally,
Appellant's punishment was at the lower end of the statutory range. Therefore, in view of the entire
charge, the evidence, argument of counsel, and the entire record of the trial on punishment, we
conclude that Appellant has failed to show egregious harm from omission of the reasonable doubt
instruction for extraneous offenses. Accordingly, Appellant's second issue is overruled.




Conclusion

 Based upon our review of the record, we conclude that Appellant failed to show egregious
harm from the submission of a jury charge that did not include the mandatory parole law instruction
and the reasonable doubt instruction on extraneous offenses. Therefore, the judgment of the trial
court is affirmed.

 JAMES T. WORTHEN 

 Chief Justice



Opinion delivered April 16, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.
























(DO NOT PUBLISH)


1. A person commits a second degree felony if he commits assault and causes serious bodily injury to
another or uses or exhibits a deadly weapon during the commission of the assault. Tex. Pen. Code Ann. § 22.02(a), 
(b) (Vernon 1994). A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to
another. Tex. Pen. Code Ann. § 22.01(a)(1) (Vernon Supp. 2003).
2. The punishment range for a second degree felony is a term of not more than twenty years or less than two
years of imprisonment and, in addition, a fine not exceeding $10,000. Tex. Pen. Code Ann. § 12.33 (Vernon 1994).
3. At the time of the shooting, Appellant and Luna were married although Luna had filed for divorce. 
According to Appellant's testimony, she and Luna were later divorced.
4. All statutory references are to the Texas Code of Criminal Procedure unless otherwise indicated.
5. Article 42.12, section 3g(a)(2) states that section 3, which authorizes judge ordered community
supervision, does not apply to a defendant when there is an affirmative finding that a deadly weapon was used or
exhibited during the commission of a felony offense and that the defendant used or exhibited the deadly weapon. 
Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2003).