In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00155-CR


______________________________




DANIEL REMSBURG, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Sixth Judicial District Court


Lamar County, Texas


Trial Court No. 21208




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 As Paris, Texas, police officers Vance Boehler and Billy Pillars walked toward Daniel
Remsburg's vehicle, Remsburg backed the vehicle rapidly--almost striking Pillars--and fled the
scene in the vehicle. In the course of Remsburg's flight, his vehicle almost collided with a vehicle
occupied by David Lawrence, a citizen bystander, who avoided a collision only by quickly moving
his vehicle out of the path of Remsburg's vehicle. Still later in Remsburg's flight, he was temporarily
stopped by Texas Department of Public Safety Trooper Greg Wilson. Wilson was standing adjacent
to Remsburg's open driver's door when he suddenly started the vehicle and moved to put it into gear. 
Wilson avoided possible serious injury by quickly diving across Remsburg's person, into the vehicle. 
The vehicle moved forward and backward at different times during the ensuing struggle between
Remsburg and Wilson before coming to rest in a ditch.

 A jury found Remsburg guilty of evading arrest or detention. See Tex. Penal Code Ann.
§ 38.04 (Vernon 2003). The jury also found Remsburg used or exhibited a deadly weapon, his
vehicle, during the commission of that offense. See Tex. Penal Code Ann. § 12.35(c)(1) (Vernon
2003) (enhancing state-jail felony crime to third-degree felony when deadly weapon used or
exhibited). The jury assessed his punishment at five years' imprisonment but assessed no fine. 
Remsburg now appeals, asserting error in the trial court's failure to define "serious bodily injury" in
the jury charge and asserting that the evidence was factually insufficient to support the deadly-weapon finding. We affirm.

(1) Failure to Define "Serious Bodily Injury" for Jury Was Not Error

 In his first point of error, Remsburg contends the trial court erred by failing, sua sponte, to
define the term "serious bodily injury" in its written jury charge. When jury charge error is urged
on appeal, we must first determine if the charge suffers from error as asserted. Abdnor v. State, 871
S.W.2d 726, 731 (Tex. Crim. App. 1994). Only if we determine that error exists must we then
determine whether the record before us reveals the requisite level of harm as a result of the alleged
error. Id. at 731-32; see also Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); Jimenez v.
State, 32 S.W.3d 233, 239 (Tex. Crim. App. 2000); Stokes v. State, 74 S.W.3d 48, 50 (Tex.
App.--Texarkana 2002, pet. ref'd).

 A trial court's written charge to the jury should set forth the law applicable to the case without
expressing any opinion the trial court may have regarding the weight of the evidence and without
summarizing any testimony or otherwise discussing the evidence presented. Tex. Code Crim. Proc.
Ann. art. 36.14 (Vernon Supp. 2006). In this case, Remsburg was charged with evading arrest or
detention while using a vehicle. See Tex. Penal Code Ann. § 38.04(b)(1). That offense is usually
a state-jail felony. Id. That offense becomes a third-degree felony if it is shown at trial that the actor
used or exhibited a deadly weapon during the commission of the offense. Tex. Penal Code Ann.
§ 12.35(c).

 In this case, the State sought that deadly-weapon finding. The part of the definition of a
"deadly weapon" applicable here required that, in the manner Remsburg used the vehicle, it was
"capable of causing death or serious bodily injury." See Tex. Penal Code Ann. § 1.07(a)(17)(B)
(Vernon Supp. 2006). So, the definition of "serious bodily injury" could have theoretically helped
the jury.

 When jury charge errors are urged on appeal, we must first determine if the current complaint
constituted error. Abdnor, 871 S.W.2d at 731. If so, we then determine whether the appellant
preserved the error at trial. If he or she did not object at trial, then the "appropriate standard [of
review] is the one for fundamental error in the charge." Jimenez, 32 S.W.3d at 239; see also Stokes,
74 S.W.3d at 50. This standard means that we should not reverse the trial court's judgment "unless
the error appearing from the record was calculated to injure the rights of the defendant, or unless it
appears from the record that the defendant has not had a fair and impartial trial." Tex. Code Crim.
Proc. Ann. art. 36.19; see also Abdnor, 871 S.W.2d at 732. The harm demonstrated by the
appellant must be actual, not merely theoretical. Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim.
App. 1984) (op. on reh'g); Taylor v. State, 146 S.W.3d 801, 804 (Tex. App.--Texarkana 2004, pet.
ref'd). Here, no objection was presented concerning the failure to define "serious bodily injury" for
the jury. Therefore, we would ordinarily seek to determine whether any error was calculated to
injure Remsburg's rights or whether he was otherwise denied a fair and impartial trial.

 We note in the record no evidence or argument made by trial counsel which makes an
important issue of whether the motor vehicle Remsburg used for his flight, with people nearby, was
capable of causing serious bodily injury or death.

 An appellate brief "must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). Remsburg's appellate
brief makes no effort to show what evidence in the record demonstrates actual harm as a result of
the trial court failing to define a term that does not appear in the indictment. The totality of
Remsburg's argument is:

 Mr. Remsburg incurred egregious harm from the trial court's failure to define
"serious bodily injury" in the charge. The jury was not instructed that serious bodily
injury would mean bodily injury that creates a substantial risk of death or that causes
death, serious permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ. The jury was allowed unfettered discretion
to surmise that serious bodily [sic] was something far less than its statutory
definition.

At best, Remsburg's argument concerns theoretical harm. The standard of review requires evidence
concerning actual harm, which Remsburg has not briefed. We overrule this point of error as
inadequately briefed. See id.

(2) Factually Sufficient Evidence Supported the Deadly-Weapon Finding

 In his second point of error, Remsburg asserts the evidence is factually insufficient to show
that, while in flight on this occasion, Remsburg used his vehicle to put another person in danger of
being harmed. In a factual sufficiency review, we view all the evidence in a neutral light and
determine whether the evidence supporting the verdict is so weak that the jury's verdict is clearly
wrong and manifestly unjust or whether the great weight and preponderance of the evidence is
contrary to the verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); see also
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996).

 Lawrence testified that, on the morning of December 18, 2005, he was driving around Paris
looking for furniture that had been abandoned outside rental houses and apartments. (1) He was near
the 9th Street Grocery Store when he saw a young male tinkering with an electrical meter outside
the store. Lawrence thought such conduct was suspicious, so he drove around the block and
eventually came back to watch the continued suspicious conduct. Eventually, Lawrence noticed that
two police officers arrived while the suspect was at the scene. As the officers approached the
suspect's gold vehicle, which the suspect had gotten into, the suspect put the vehicle in reverse
(almost striking one of the officers) and fled the scene. Another officer then got into a police cruiser,
activated that vehicle's lights and sirens, and followed the gold vehicle. The driver then drove the
gold vehicle towards where Lawrence was parked. Fortunately, Lawrence moved his truck just in
time to avoid being struck in the passenger's side by the speeding gold vehicle. Lawrence testified
that, had he not reacted so quickly by moving his truck out of harm's way, both he and his truck
might have been damaged from the otherwise inevitable collision. 

 Officer Shane Stone of the Paris Police Department testified that he was dispatched to the
9th Street Grocery Store regarding the event. Stone testified he was wearing his distinctive police
uniform and driving a clearly marked police vehicle. As he arrived at the scene, two other police
officers were already there, Officers Pillars and Boehler. Also at the scene was a gold vehicle with
the headlights turned off. Stone then observed that the driver of the gold vehicle "took off pretty
quick . . . ." Stone then drove after the fleeing gold vehicle. He also sent out a "be-on-the-lookout"
over his police radio, warning other officers nearby to be watching for the gold vehicle. Stone,
however, quickly lost sight of that vehicle. 

 Shortly thereafter, Trooper Wilson spotted the gold vehicle less than two miles from where
Stone had lost sight of the suspect's vehicle. Wilson testified that the suspect's vehicle was traveling
sixty-six miles per hour on a road marked for a maximum of sixty miles per hour. Trooper Wilson
eventually got the driver of the vehicle to stop. Wilson then got out of his vehicle, ordered the
suspect to turn off the ignition to the gold vehicle, and walked toward that vehicle. When Wilson
reached the suspect's driver's side door, the officer asked the driver to get out of the gold vehicle. 
The driver, however, did not comply; instead, he turned the ignition back on, threw the transmission
into gear, and tried to take off. Wilson instinctively jumped inside the suspect's vehicle. The vehicle
eventually ended up in a ditch. Wilson testified that, had he not jumped inside the vehicle (but had
instead remained outside of the vehicle when the suspect attempted suddenly to drive off), he might
have been killed or seriously injured by being run over by the suspect's vehicle. Eventually the
vehicle was stopped, and its driver--identified at trial as Remsburg--was taken into custody. (2) 

 We believe the jury was free to conclude that Remsburg's conduct relative to Wilson was part
and parcel of his continuing efforts to elude police capture. Cf. Hobbs v. State, 175 S.W.3d 777,
778-81 (Tex. Crim. App. 2005) (evading arrest can be continuous crime); and cf. id. (Cochran, J.,
dissenting) (change in accused's manner of locomotion from fleeing on foot to fleeing in vehicle does
not encompass two separate crimes, but is instead one continuous criminal act of evading arrest). 
The jury could also have easily concluded this use of the vehicle risked causing death or serious
bodily injury to Wilson. Alternatively, the jury was free to conclude that Remsburg's actions of
almost running into Lawrence's vehicle constituted a use of the gold vehicle that was capable of
causing death or serious bodily injury.

 Remsburg's brief on appeal has failed to direct our attention to any contrary evidence, and
our independent review of the record has revealed none. Accordingly, we cannot say the
overwhelming weight of the evidence in this case contradicts the jury's verdict. We overrule
Remsburg's final point of error.







 For the reasons stated, we affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: March 5, 2007

Date Decided: March 30, 2007


Do Not Publish


1. Lawrence testified he collects this furniture, repairs it, and gives it away to the needy in
connection with his involvement with a Christian charity. 
2. According to various witnesses, Remsburg did not, in any manner, cooperate with the
arresting officers; instead, Remsburg violently resisted being taken into police custody.