In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00156-CR


______________________________




DANIEL REMSBURG, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 6th Judicial District Court


Lamar County, Texas


Trial Court No. 21210




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 A jury found Daniel Remsburg guilty of threatening Officer Billy Pillars of the Paris Police
Department with imminent bodily injury. See Tex. Penal Code Ann. § 22.01(a)(2) (Vernon Supp.
2006). The jury also found that Remsburg used or exhibited a deadly weapon during the commission
of that offense, elevating the charge to aggravated assault. See Tex. Penal Code Ann. § 22.02(a)(2)
(Vernon Supp. 2006). The jury assessed his punishment at imprisonment for twenty-five years and
no fine. Remsburg now appeals, raising two issues. We affirm.

(1) Failure to Instruct on Statutory Definition

 In his first point of error, Remsburg contends the trial court erred by failing to instruct the
jury about the definition of "serious bodily injury" in the court's written jury charge. No request for
the inclusion of that definition was made by Remsburg at trial and an allegation of error in that
regard is first made in this appeal. When jury errors concerning jury charge issues are brought
forward on appeal, we must first determine if the complaint now raised did, indeed, constitute error
in the jury charge. Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). We then
determine whether the appellant preserved the alleged error at trial. If he did not object at trial, then
the "appropriate standard [of review] is the statutory one for fundamental error in the charge." 
Jimenez v. State, 32 S.W.3d 233, 239 (Tex. Crim. App. 2000); see also Stokes v. State, 74 S.W.3d
48, 50 (Tex. App.--Texarkana 2002, pet. ref'd). This standard means that we should not reverse the
trial court's judgment "unless the error appearing from the record was calculated to injure the rights
of the defendant, or unless it appears from the record that the defendant has not had a fair and
impartial trial." Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006); see also Abdnor, 871
S.W.2d at 731 n.4. If, however, an objection was raised in the trial court, then we must determine
only whether "some harm" accrued to the defendant as a result of the error. Jimenez, 32 S.W.3d at
237. Stated differently, under this latter standard, we would be required to reverse the trial court's
judgment for any nonstructural error unless we were convinced, beyond a reasonable doubt, that the
error did not contribute to the appellant's conviction or punishment. Id.

 A jury charge should set forth the law applicable to the case without "expressing any opinion
as to the weight of the evidence, not summing up the testimony, discussing the facts or using any
argument in his charge calculated to arouse the sympathy or excite the passions of the jury." Tex.
Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2006). Remsburg was charged with aggravated
assault. The amended indictment specifically alleged "did use or exhibit a deadly weapon . . . a
motor vehicle" to commit the crime. By statute, a deadly weapon is defined as something that in its
manner of use or intended use is capable of causing "serious bodily injury." See Tex. Penal Code
Ann. § 1.07(a)(46) (Vernon Supp. 2006). So, arguably, a jury instruction giving the statutory
meaning of "serious bodily injury" would have been helpful to the jury in evaluating whether
Remsburg's alleged use of the motor vehicle qualified as use or exhibition of a "deadly weapon." 
However, Remsburg's appellate brief only speculates about the impact of this missing definition; he
makes no effort to show this Court where, in the appellate record, there is evidence of actual (as
opposed to merely theoretical) harm.

 An appellate brief "must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(h). Remsburg's appellate
brief makes no effort to show what evidence in the record demonstrates actual harm as a result of
the trial court failing to define "serious bodily injury." The totality of his argument is:

 Mr. Remsburg incurred egregious harm from the trial court's failure to define
"serious bodily injury" in the charge. The jury was not instructed that serious bodily
injury would mean bodily injury that creates a substantial risk of death or that causes
death, serious permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ. The jury was allowed unfettered discretion
to surmise for themselves that serious bodily [sic] was something far less than its
statutory definition.


At best, Remsburg's argument concerns theoretical harm. The standard of review requires evidence
concerning actual harm, which Remsburg has not briefed. We overrule this point of error as
inadequately briefed.

(2) Factual Sufficiency Regarding Deadly Weapon Finding

 In his second point of error, Remsburg contends that the evidence is factually insufficient to
support the jury's finding that he endangered the safety of someone he knew to be a public servant
at the time the offense was committed. Remsburg asserts that the evidence in this case is too weak
to support the jury's finding of such. 

 In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong and
manifestly unjust or whether the great weight and preponderance of the evidence is contrary to the
verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); see also Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App.
1996).

 Officer Van Boehler of the Paris Police Department testified that he had been on night patrol
December 18, 2005. He had been training Officer Pillars that evening when they were dispatched
to the 9th Street Grocery Store. When they arrived, they left the headlights to their marked patrol
vehicle on; they did not, however, turn on their car's overhead lights. Both officers exited the vehicle
and were wearing their distinctive police uniforms. When the suspect (later identified as Remsburg)
got inside his car and began to start that vehicle's engine, Pillars loudly identified himself as a police
officer and yelled at the driver to make no further movements. Remsburg, however, immediately
put his vehicle in reverse, nearly running over Officer Pillars in the process. Remsburg then fled the
scene without turning on his headlights, even though it was still dark. The record also indicates that
Remsburg effected his immediate escape by driving through a nearby yard instead of turning onto
a marked street; this is conduct from which a jury might infer that Remsburg intended to flee the
scene in the most expedient manner. 

 Officer Pillars testified he was working as a rookie officer during the early morning hours
of December 18, 2005, when he and Officer Boehler were dispatched to the 9th Street Grocery Store
about a burglar alarm which had been tripped. They drove to the store's location but turned on
neither the marked police vehicle's overhead lights nor its siren. Pillars drove into the store's parking
lot and moved the vehicle to a location about twelve feet away from Remsburg's gold car. Pillars
exited his police cruiser, saw Remsburg inside the gold-colored car, and began walking toward the
latter's vehicle. Pillars then yelled at Remsburg, "Stop, police," which caused Remsburg to turn and
look directly at Pillars. According to Pillars, the two made direct eye contact at this moment. Pillars
also testified that Remsburg's driver's side window was down. Remsburg, however, did not stop but,
rather, put his vehicle's transmission into reverse and almost ran the vehicle over Pillars. 

 Remsburg testified that, on the morning in question, he initially did not see Officer Pillars
as he walked toward Remsburg's car. He later did see someone behind his car, but Remsburg
testified he did not then realize that the two people behind his car at the 9th Street Grocery Store
were police officers. Nevertheless, as Remsburg later drove away from the scene, the thought did
occur to him that the two people who had been approaching him at the grocery store might have been
law enforcement officers. 

 Essentially, the jury heard conflicting testimony about whether Remsburg knew or did not
know the person he had tried to run over was a police officer at the time Remsburg engaged in the
dangerous conduct. The jury chose to believe the officers' version of events (i.e., that Remsburg was
aware that his actions targeted two police officers) rather than Remsburg's contrary version. The jury
was in the best position to assess the witnesses' credibility; since the officers' testimony, if believed
over Remsburg's, would support the verdict, we can neither say the jury's verdict in this case is
against the great weight and preponderance of the evidence nor can we say that the verdict is
manifestly unjust. Accordingly, we must conclude that the evidence is factually sufficient to support
the jury's conclusion that Remsburg knew that, at the time he committed his crime, the crime's
intended victim was a police officer. 

 We overrule Remsburg's final point of error and affirm the trial court's judgment.




 Bailey C. Moseley

 Justice


Date Submitted: March 5, 2007

Date Decided: March 30, 2007


Do Not Publish



Ross
                                                                           Justice

 
Date Submitted:      March 9, 2005
Date Decided:         March 15, 2005

Do Not Publish